UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AMERICAN GENERAL LIFE INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>vs. )<br><br>GERMAINE TOMLINSON INSURANCE TRUST, DATED JANUARY 23, 2006, by and through its Trustees; J.B. CARLSON, MICHELE HARRA AND WILMINGTON TRUST COMPANY, as Trustees of the Germaine Tomlinson Insurance Trust, dated January 23, 2006; THE CARLSON MEDIA GROUP, as beneficial owner of the Germaine Tomlinson Insurance Trust, dated January 23, 2006; and GEOFFREY A VANDERPAL, )<br><br>Defendants, )<br><br>ESTATE OF GERMAINE "SUZY" TOMLINSON; and TOMISUE HILBERT, )<br><br>Intervenor Defendants. ) | 1:08-cv-1747- SEB-TAB |

## ENTRY ON PENDING MOTIONS

The facts of this case are, to say the least, prolix and convoluted. Fortunately, for purposes of this entry, we need not engage in an attempt to sort out all of the potentially relevant facts in order to resolve the pending motions. At this juncture, we shall provide only so much of the factual background as is required for us to resolve the pending motions and give direction to the parties for the next stages of this litigation.

Carlson Media Group, Inc. ("CMG") was organized as a Delaware corporation with its business operations located in Noblesville, Indiana. Its authorization to conduct business in Indiana dates back to 2001, but it was administratively dissolved in March 2008. Jason C. Bolf, who later changed his name to J.B. Carlson, was at all relevant times CMG's majority shareholder, President, CEO and Chairman of the Board of Directors. To avoid confusion, we refer to him throughout this entry as "Carlson," regardless of his name change.

In 2006, Germaine "Suzy" Tomlinson was a shareholder and member of the Board of Directors of CMG. Whether she was actively engaged as a director of CMG at any given point in time is a matter in dispute. Not in dispute is the fact that Tomlinson had relatively little income and lived in a house that was owned by her daughter, TomiSue Hilbert. Germaine Tomlinson died in September 2008 from what the county coroner determined to be an accidental drowning in her home, compounded by alcohol-based intoxication. Whether she was sixty-nine or seventy-four at the time of her death is unclear but immaterial.

Geoffrey Vanderpal was an independent insurance agent and financial planner whose home and business office were in Nevada during the relevant time period; he now resides in Texas. In January 2006, Vanderpal submitted an application for life insurance

to American General Life Insurance Company ("AGL"), which resulted in that company's issuance of a life insurance policy for the face amount of fifteen million dollars ($15,000,000) on the life of Germaine Tomlinson. The named beneficiary of the policy was the Germaine Tomlinson Insurance Trust dated January 23, 2006 ("GT Trust"). The application submitted to AGL, which was also dated January 23, 2006, stated that the Wilmington Trust Company ("Wilmington") was the current trustee of the GT Trust. Further, the application bore the signatures of Germaine Tomlinson, Geoffrey Vanderpal and Michele Harra, as a representative of Wilmington.

An unauthenticated trust agreement submitted to the Court by AGL purports to have created the GT Trust, and is dated January 23, 2005 (not 2006 as referenced in the insurance application). That document states that the "Settlor" of the GT Trust is Germaine Tomlinson, the Beneficial Owner is CMG and the Trustee and Co-Trustee are Wilmington and Carlson, respectively. Provisions of the trust document allow the Settlor to direct the Trustee to dissolve the trust or amend its terms without restriction, other than that the requirement that the Settlor's instructions to the Trustee be in writing. The trust document purports to bear the signatures of Tomlinson, Carlson and Harra, with Carlson signing as both Co-Trustee and as the CEO of CMG.

AGL filed suit in this court on December 31, 2008, naming as Defendants CMG, Vanderpal, the Germaine Tomlinson Trust Dated January 23, 2006, and its Trustees, J.B. Carlson, Michele Harra and Wilmington. The lawsuit alleges that Vanderpal, Carlson

and others (whom AGL claims helped finance the purchase of the insurance) engaged in a scheme to dupe Tomlinson and obtain a sizeable life insurance policy on her life without their possessing an insurable interest so that they could later profit from selling the policy on the secondary market. AGL alleges that the sale on the secondary market could not be completed prior to Tomlinson's death and that CMG now seeks to collect on the life insurance despite never having held an insurable interest in the life of Tomlinson. According to AGL's Complaint For Declaratory Relief and Disgorgement, it is entitled to keep the premiums paid for the insurance, to withhold payment of the policy proceeds, and to be reimbursed by Vanderpal for the commissions AGL paid to him.

CMG, Carlson and the GT Trust (the "Trust Defendants") have responded by claiming that the insurance policy was originally purchased as a "key man" policy to protect CMG against the loss of Tomlinson's contributions to the success of the business as a director. They claim her skills and importance to the business were demonstrated by the fact that she had introduced Carlson and the company to numerous potential clients. Therefore, they contend that CMG, as Beneficial Owner of the GT Trust, had an insurable interest in Tomlinson's life, but that, even if no such insurable interest existed, the policy's two-year incontestability clause acts as a bar to AGL's denial of CMG's claim to the policy proceeds. Vanderpal asserts that there is no evidence that he did anything wrong with regard to the issuance of the policy and that he therefore can not be made to reimburse AGL for his commissions unless AGL is in turn required to repay the

premiums paid to purchase the policy. Each of the Trust Defendants has counterclaimed that ALG has acted in bad faith by refusing to pay the policy proceeds to CMG.

Tomlinson's Estate and Tomisue Hilbert, who is Tomlinson's daughter (collectively the "Tomlinson Defendants"), were allowed to intervene in this lawsuit based on their potential interest in its outcome. They apparently knew very little about any of the relevant circumstances in June of 2009 when they sought to intervene and filed their answer and affirmative defenses, and later a crossclaim in September 2009. More recently, they claim that discovery has produced evidence not only to support an intention on the part of Tomlinson to obtain a life insurance policy for the benefit of her children and grandchildren, but also to support the inclusion of AGL and certain other entities who apparently financed the purchase of the life insurance policy as passive participants in the scheme initiated by Carlson and Vanderpal to dupe Tomlinson and to sell the policy on the secondary market. The Tomlinson Defendants argue that the proceeds of the policy should be paid into court and held in escrow until a decision can be made regarding the distribution of the money. These Defendants have also sought leave to file an Amended Answer, Affirmative Defenses, Counterclaim, Crossclaims and Third-Party Claim.

Summary judgment motions have been filed by AGL, Vanderpal, the Trust Defendants and the Tomlinson Defendants, respectively. There are also pending motions seeking leave to file additional briefs. We address all of these motions below.

***Summary Judgment Standard***

Summary judgment is appropriate when the record establishes that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *See id.* at 255. However, neither the "mere existence of some alleged factual dispute between the parties," *id*. at 247, nor the existence of "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), will defeat a motion for summary judgment. *Michas v. Health Cost Controls of Illinois, Inc.*, 209 F.3d 687, 692 (7th Cir.2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence

to support the non-moving party's case. *Id.* at 325.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.1994). Thus, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enter., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir.1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir.1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish her case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir.2003). Further, a failure to prove one essential element "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Courts are often confronted with cross-motions for summary judgment because Rules 56(a) and (b) of the Federal Rules of Civil Procedure allow both plaintiffs and defendants to move for such relief. "In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard." *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D.Md.1998). Thus, in determining whether genuine and material factual disputes exist in this case, the Court has considered the parties' respective memoranda and the exhibits attached thereto, and has construed all facts and drawn all reasonable inferences therefrom in the light most

favorable to the respective non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

<u>*AGL's Motion for Leave to File Sur-Reply Brief (Doc. # 104)*</u>

AGL seeks to supplement its briefing with respect to the two summary judgment motions filed by the Trust Defendants and the Tomlinson Defendants on the grounds that an additional brief will allow it to clear up any confusion that may exist with regard to Ind. Code § 27-1-12-44, which was enacted in 2008 for the purpose of barring an insurer from denying payment of life insurance benefits after the two-year contestability period if the policy was issued in connection with "stranger originated life insurance," as that phrase is defined in Indiana's insurance statutes. However, the sur-reply brief which AGL seeks to file barely addresses the statute, focusing instead on already briefed issues. Only the Tomlinson Defendants have made any mention of the statute in their briefing and then only to assert that it provides an indication of the applicable public policy dealing with the denial of benefits following the expiration of the two-year contestability period. We note that by its own terms the statute's prohibitions are limited to policies issued after June 30, 2008, which defeats its usefulness here.

In short, there is no confusion regarding the meaning or application of the referenced statute and, therefore, no reason to permit the additional briefing requested by AGL. AGL's motion for leave is denied.

AGL contends that the undisputed evidence establishes conclusively that Carlson and Vanderpal conspired to obtain the life insurance on the basis of fraud given that Tomlinson was a director of CMG in name only, which vested no insurable interest in CMG and rendered the insurance policy nothing other than a wagering contract which, pursuant to Indiana common law, statute and public policy, is void *ab initio*.  Under Indiana law, which all the parties appear to agree applies to the insurance issues in this case, a party has an insurable interest in the life of another only if there is a reasonable probability that that party would gain by the latter's remaining alive or suffer a pecuniary loss by his/her death.  *In re Estate of Powers,* 849 N.E.2d 1212, 1218 (Ind.App. 2006).

Circumstantial evidence exists which would support a finding that Vanderpal and Carlson had ulterior motives when they helped procure the policy; however, there is also some evidence to establish that Tomlinson did serve as an active CMG board member, having attended various business meetings and introduced Carlson and CMG to various persons who possessed sufficient financial resources to qualify them to become CMG clients or investors.  Evidence of Tomlinson's participation as a director comes not just from the self-serving testimony of Carlson, but also from the deposition testimony of two other members of the CMG Board of Directors and the minutes from CMG Director meetings.  If Carlson and others are  to be believed, CMG was at risk of suffering a pecuniary loss as a result of Tomlinson's death.  Furthermore, under both Delaware and

Indiana statutes, corporations are authorized to insure the lives of members of their board of Directors for the benefit of the corporation. Del. Code Ann. 8, § 122(16); Ind. Code § 27-1-12-17.

Nevertheless, AMG may have focused unduly on whether CMG possessed an insurable interest at the time the policy was issued. Any person has an insurable interest in his/her own life and may choose whomever she likes to be the beneficiary of a policy which she has procured. *New York Life Ins. Co. v. Greenlee*, 84 N.E. 1101 (Ind. App. 1908). There is some evidence that Tomlinson participated in the procurement of the policy and that she intended that her decedents receive its benefits. For example, her signature appears on the application and, according to the testimony of a third-party investigator hired by AGL to assist the underwriting process, she informed the underwriting investigator that the ultimate beneficiaries of the insurance policy and of any trust that might be created for use in connection with its issuance were intended to be her children and grandchildren. We are unsure what to make of the apparently conflicting trust documents referenced in this litigation, none of which have been authenticated thereby casting doubt as to whether a trust actually exists; if it does exist, its terms are unknown. To the extent that a trust was created to serve as the owner of the policy and its terms reflect the unauthenticated trust document submitted by AGL, Tomlinson, as "Settlor,"appears to have retained sufficient control over the trust to hold the exclusive power to change the beneficial interest at any point through her written direction to the

trustee.

In the end, it is abundantly clear that a myriad of material questions of fact remain, thereby foreclosing summary judgment on the issue of whether CMG had an insurable interest at the time the policy was issued or even whether CMG's insurable interest is at issue in light of the potential that Tomlinson as Settlor of the GT Trust retained at all times the power to alter who held the beneficial interest in the trust. Unless the "insurable interest" issue can be resolved, the court can not determine whether AGL acted in bad faith, whether the amount of the premiums paid should be retained by AMG or returned, or if Vanderpal should be required to disgorge the commissions he received. Further, we are in no position at this point to rule that the Tomlinson Defendants will never have any basis on which to recover the policy proceeds. In their proposed Amended Answer, Counterclaim and Crossclaim (which we address later in this entry), the Tomlinson Defendants maintain that AGL was, at a minimum, a passive participant in the alleged scheme to defraud Tomlinson and has inequitably profited from the receipt of the premiums paid for the life insurance. They therefore seek the creation of a constructive trust and an award of other equitable relief in their proposed amended pleading, and so far as we can tell at this juncture, they may be entitled to relief.

For all of these reasons, we deny AGL's Motion for Summary Judgment.

_Trust Defendants' Motion for Partial Summary Judgment (Doc. #89)_

The Trust Defendants' summary judgment motion is premised on a single, relatively simple contention: the two-year inconstestability clause in the policy bars AGL from successfully claiming CMG had no insurable interest in the policy. AGL argues in response that if the policy is in fact and law void *ab initio*, there is no enforceable incontestability clause.

There is a split in reported authorities with regard to whether an incontestability clause in an insurance policy trumps an insurer's ability to assert a lack of insurable interest. *See generally,* Lee R. Russ & Thomas F. Segalla, 17 *Couch On Insurance §* 240:82 (3d ed. 1995). The majority of courts favor allowing a lack of insurable interest to be raised at any point in time because the parties to an illegal contract should not be able compel a court to enforce it by stipulating to its incontestability. *See, e.*g., *Paul Revere Life Ins. Co. v. Fima,* 105 F.3d 490 (9th Cir. 1997); *Kentucky Cent. Life Ins. Co. v. McNabb*, 825 F.Supp. 269, 273 (D.Kan. 1993); *Beard v. American Agency Life Ins. Co.,* 550 A.2d 677 (Md. 1988). Only courts in New York and Michigan have found the arguments giving priority to the incontestability clause more compelling.

In *New England Mutual Life Insurance Company v. Caruso*, 535 N.E.2d 270 (N.Y. 1989), the court examined New York insurance statutes and noted the established precedent of prior New York court decisions enforcing incontestability clauses against all challenges. On the basis of this analysis, the Court ruled that the insurer must in all instances investigate the insurable interest and challenge it as appropriate within the

period the policy prescribes for contesting its validity. The Court further noted that by statute an insured or his representative is permitted to recover proceeds paid to a policy holder without an insurable interest and that that statutory provision permits policies, even though improperly issued, to still be enforced. *Id*. at 273.

These decisions from New York courts appear to have influenced the Supreme Court of Michigan when it determined that insurers should be required to challenge a lack of insurable interest within the contestability period of the policy. *See Bogacki v. Great-West Life Assur. Co.,* 234 N.W. 865, 866 (Mich.. 1931). The court in *Bogacki* ruled that the statutory requirement that an insurance policy contain an incontestability clause reflects the public policy choice in favor of requiring all challenges to insurance policies to be raised within the stipulated time period. *Id*. at 866-67.

We, of course, are charged with applying Indiana law in the same manner as would the highest court of Indiana, as best we can predict it. *Klunk v. County of St. Joseph*, 170 F.3d 772, 777 (7th Cir.1999). In our view, the Indiana Supreme Court would likely join the majority of jurisdictions in holding that an insurer may raise the issue of a policy owner's lack of insurable interest regardless of the running of the period of contestability set forth in the policy. Like Michigan, Indiana statutes also require an incontestability clause be included in life insurance policies, *see* Ind. Code § 27-1-12-6(a)(3); however, a competing public policy appears in a variety of other state statutes as well. For example, no life insurance policy may be assigned to someone who does not possess an insurable

interest in the life being insured.  Ind. Code § 27-8-3-8.  This public policy requiring the existence of an insurable interest has also been reinforced in Indiana case law.  *E.g.,* *Hilliard v. Jacobs*, 874 N.E.2d 1050, 1063 (Ind. App. 2007).  "It is well settled that 'Where, however, a policy is issued to one upon the life of another, the former having no insurable interest in the latter, it is void, being in the nature of a wagering contract, and hence in contravention of public policy.'" *Id.* (quoting *Miller v. Travelers' Ins. Co.,* 144 N.E. 554, 555 (Ind. App. 1924)).  We therefore conclude that under Indiana law, an insurer's ability to raise the issue of a lack of insurable interest exists even after the incontestability period of a policy has run.

*Vanderpal's Motion for Summary Judgment (Doc. #120*

Vanderpal asks us to grant summary judgment in his favor on AGL's claim for disgorgement of commissions on the basis of the two-year incontestability clause, for AGL's failure to submit or retain an expert who could testify to any breach of his duties or obligations as an agent, and AGL's failure to submit a copy of any contract upon which he could be made to return the commissions he was paid.  We are not persuaded by any of these arguments, however.

We are not certain that Vanderpal, in his capacity as an agent, can rely on the incontestability clause in an insurance policy he does not own in an effort to defeat AGL's claim for a return of the commission he was paid.  As we have explained above,

we believe that under Indiana law AGL would be permitted to challenge the insurance policy as being void *ab initio* due to a lack of an insurable interest and, if it can be shown that Vanderpal was aware of the lack of an insurable interest when the policy was issued, he may be required to return his commissions.

The fact that AGL has not buttressed its claims by expert testimony is of no moment either. If the evidence shows that Vanderpal knowingly engaged in making fraudulent or deceptive representations, as has been alleged by AGL and the Tomlinson Defendants, no expert testimony would be required to establish that he committed a breach of his fiduciary duties or to prove fraud.

In response to Vanderpal's motion, AGL has submitted what purports to be an agency agreement entered into between it and the company that Vanderpal owned and operated. Vanderpal accurately notes that the agreement is unauthenticated (like far too many of the supporting documents submitted by AGL as part of its briefing in this case). But Vanderpal does not contest the contract's authenticity; rather, he simply notes that, pursuant to the contract, if he is obligated to return his commissions, AGL is required to refund the premiums. AGL is currently insisting that it is entitled to retain those premiums. Clearly material issues of fact infuse this controversy, foreclosing Vanderpal's entitlement to summary judgment. Accordingly, his motion is denied.

*Tomlinson Defendants' Motion for Partial Summary Judgment (Doc. #93)*

The Tomlinson Defendants also base their summary judgment motion on the two-year incontestability clause in the contract, contending that the proceeds of the policy should be paid into court and held in escrow until such time as a determination is made as to who is legally entitled to receive the money. For the same reasons we rejected this argument in connection with the motions filed by the Trust Defendants and Vanderpal, we reject it here as well. The Tomlinson Defendants' Motion for Summary Judgment is therefore denied.

*Tomlinson Defendants' Motion for Leave to File Amended Pleadings (Doc. #178)*

As previously noted, the Tomlinson Defendants entered this litigation without much knowledge of any of the underlying circumstances related to the purchase of the life insurance policy at issue or the basis for the dispute over payment of its proceeds. Indeed, we are informed that Tomisue Hilbert, Ms. Tomlinson's daughter, first learned of the existence of the policy when she read a newspaper article discussing the filing of this lawsuit. After intervening in an effort to protect their interest, if any, the Tomlinson Defendants have learned substantially more of the factual basis for this litigation.

The Tomlinson Defendants therefore requested that they be permitted to file an Amended Answer, Affirmative Defenses, Crossclaims, Counterclaims and Third-Party Claims in response to AGL's Amended Compliant for Declaratory Relief and Disgorgement. They intend through these amended pleadings to bring in additional

parties who allegedly participated in the financing of the purchase of the insurance, and who were in league with Carlson and Vanderpal in hatching the plot to dupe Tomlinson into believing she was providing for her decedents while they obtained the insurance policy which they hopefully could sell for profit in the controversial secondary market for life insurance. Moreover, the Tomlinson Defendants allege in their proposed counterclaim that AGL turned a blind eye to this illegal and fraudulent plan.

AGL and the Trust Defendants have adamantly opposed the Tomlinson Defendants' Motion for Leave to Amend, arguing that an amendment would be untimely, futile, unfairly prejudicial and that the motion is brought in bad faith. We do not share these views.

Whether or not they were required to do so, the fact that neither AGL nor the Trust Defendants ever saw fit to advise the Tomlinson Defendants of the existence of the policy or the dispute over its validity makes it hard to accept their complaints of prejudice from any delay caused by the Tomlinson Defendant's opportunity to fully investigate the circumstances underlying this litigation. Neither do we have reason to conclude that the Tomlinson Defendants are acting in bad faith by seeking to amend their pleadings to assert whatever interests or positions they are entitled to advance. The life insurance application reveals on its face a different purpose than that which both AGL and the Trust Defendants now argue it was intended for. Indeed, it appears that AGL underwrote the policy based on the purpose expressed in the application. These issues deserve to be

fully explored by the Tomlinson Defendants.

We acknowledge that discovery was to be completed by this point and that the addition of the Tomlinson Defendants' new claims will no doubt require additional discovery. Given that the Tomlinson Defendants were put in the position of having to play "catch-up" in protecting their interests in this lawsuit, we believe the delay is justifiable. In this regard, we note that at this point CMG is no longer operational, that AGL remains in possession of the insurance process, and no one will be seriously disadvantaged while the final discovery occurs.

AGL's final argument, that the claims that the Tomlinson Defendants seek to pursue are futile, is not convincing. As we have noted previously, the record before us is far from clear as to when, if ever, the trust referenced in the application and policy was created, and what the terms of the trust actually are. Whether CMG possessed a beneficial interest in the policy at the time of decedent's passing may not be controlling. CMG's insurable interest does not necessarily control if the decedent, as settlor of any trust, at all times retained the ability to effect who ultimately held the beneficial interest.

Further, we are not convinced by AMG's contention that the Tomlinson Defendants' claims of fraud lack sufficient specificity and, pursuant to *Bell Atlantic Corp. v. Twombly,* would be subject to dismissal. The proposed amended pleadings provide ample specificity to satisfy the requirements of *Twombly*.

Finally, we reject as inconsistent with Indiana precedent AMG's contention that Ind. Code § 34-11-7-1, which extends by up to eighteen months the time in which a cause of action possessed by the decedent at the time of her death may be brought by his estate, limits any longer period of repose to that eighteen month period following death. The discussion of Ind. Code § 34-11-7-1 by the Court *In re Guarianship of French*, 927 N.E.2d 950 (Ind. App. 2010) which has been relied upon by AMG was quite brief probably because the action was in fact brought within eighteen months of the decedent's demise, making the statute inapplicable. We are loathe to rely on a footnote comment from an Indiana Court of Appeals opinion and in so doing ignore unchallenged controlling Supreme Court precedent in place for more than one hundred years, holding that Ind. Code § 34-11-7-1 (or its earlier codification at Section 217 of the Practice Act) expands but does not shorten the period in which the estate may pursue a decedent's cause of action. *Harris v. Rice,* 66 Ind. 267, 270 (1879); *Shearer v. Pla-Boy, Inc.*, 538 N.E.2d 247. 251 (Ind. App. 1989)("[O]ur supreme court has, on several occasions, determined that the effect of I.C. § 34-1-2-7 is to *extend* general statutes of limitation when a person dies after the limitation period has begun to run, but less than 18 months before it expires."(emphasis in original)).

In sum, we conclude that, by allowing the Tomlinson Defendants to file their Amended Answer, Affirmative Defenses, Crossclaims, Counterclaims and Third-Party Claims, we satisfy the directives of Fed.R.Civ. P. 15(a)(2), that leave to amend be freely

given to serve the interests of justice. Accordingly, the Tomlinson Defendants' Motion for Leave to Amend is granted.

## *Joint Motion to Bifurcate (Doc. #167)*

All parties to the litigation joined in a motion to bifurcate the resolution of the issues before the Court, suggesting that the most efficient way to resolve this case would be to first determine whether the policy is void *ab initio,* whether AGL acted in bad faith and who is entitled to retain the premiums paid on the policy and the agent's commission. Thereafter, if the contract is enforceable, entitlement to the proceeds would be decided. There is no opposition to this motion to bifurcate, and the Court finds that it is well taken. The motion is therefore granted.

## *AGL's Separate Motions to Bifurcate Proceedings (Doc. #168) & Tomlinson Defendants' Motion for Leave to File Sur-Reply (Doc. #175)*

AGL filed a separate motion, assuming the joint motion to bifurcate is granted, requesting that the Tomlinson Defendants not be permitted to participate in the first phase of the trial. The insurer contends that the Tomlinson Defendants are neither named owners nor beneficiaries of the policy and their participation would only confuse or unduly prejudice the jury. The Trust Defendants indicate that they are in agreement with AGL on this issue.

First, because issues were raised by AGL and the Trust Defendants in their reply

briefs and were not raised previously, the Tomlinson Defendants' Motion for Leave to File Sur-Reply is granted.

We emphasize once more that the record before us at this point simply does not establish that only CMG's insurable interest is at issue in the first phase of the litigation. There is no authenticated trust document on file, and the unauthenticated documents referred to in the briefing reflect two different dates. In addition, equitable issues exist which may impact the ultimate remedy available in this case. The Tomlinson Defendants have an interest in these issues and are entitled to offer evidence with respect to whether an insurable interest existed at the time the policy was issued. Accordingly, AGL's separate Motion to Bifurcate is denied.

## *Conclusion*

On the basis of the preceding explication the Court rules as follows:

1. AGL's Motion for Leave to File Sur-Reply Brief (Doc. # 104) is DENIED.

2. The Tomlinson Defendants' Motion for Leave to File Sur-Reply (Doc. #175) is GRANTED.

3. AGL's Motion for Summary Judgment (Doc. #115) is DENIED.

4. The Trust Defendants' Motion for Partial Summary Judgment (Doc. #89) is DENIED.

5. Vanderpal's Motion for Summary Judgment (Doc. #120) is DENIED.

6. The Tomlinson Defendants' Motion for Partial Summary Judgment (Doc. #93) is DENIED.

7. The Joint Motion to Bifurcate (Doc. #167) is GRANTED.

8. AMG's Motion to Bifurcate (Doc. #168) is DENIED

9. The Tomlinson Defendants' Motion for Leave to File Amended Pleadings (Doc. #178) is GRANTED and the amended pleading attached as an exhibit to the motion is deemed filed as of the date of this order.

With this order, Magistrate Judge Tim A. Baker is hereby requested to schedule a conference for the purpose of organizing further discovery necessitated by the Tomlinson Defendants' amended pleadings and, if appropriate, to facilitate any potential settlement discussions. The trial of this matter will be set by a separate order at a later date.

IT IS SO ORDERED.

Date: 09/30/2010

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Vincent P. Antaki
REMINGER & REMINGER CO LPA
vantaki@reminger.com

David P. Donahue
MAYNARD COOPER & GALE P.C.
ddonahue@maynardcooper.com

Curtis T. Jones
BOSE MCKINNEY & EVANS, LLP
cjones@boselaw.com

Todd J. Kaiser
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART
todd.kaiser@odnss.com

Dennis Francis McCrosson III
MCCROSSON & ASSOCIATES
dmccross@mccrossonlaw.com

Michael D. Mulvaney
MAYNARD COOPER & GALE P.C.
mmulvaney@maynardcooper.com

Kyle B. Osting
BAKER & DANIELS - FT. Wayne
kbosting@bakerd.com


Linda L. Pence
PENCE HENSEL LLC
lpence@pencehensel.com

Kevin Morris Toner
BAKER & DANIELS - Indianapolis
kevin.toner@bakerd.com

Judy L. Woods
BOSE MCKINNEY & EVANS, LLP
jwoods@boselaw.com